# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION


PETER L. SHIRD,

                 Plaintiff,

vs.                                        CASE NO: 2:08-cv-472-29-SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                 Defendant.

_____

## REPORT AND RECOMMENDATION[1]

### TO THE DISTRICT COURT

This matter comes before the Court on the Plaintiff, Peter L. Shird's, Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on June 10, 2008.  The Plaintiff filed his Memorandum of Law in Support of the Complaint (Doc. #16) on December 12, 2008.    The Commissioner filed a Memorandum of Law in Support of the Commissioner's Decision (Doc. #19) on February 11, 2009.  Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

_____

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

# FACTS

## *Procedural History*

On October 20, 2004, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging an onset disability date of September 15, 2004. (Tr. 12). The Plaintiff's claims were denied initially on March 28, 2005, and upon reconsideration on June 28, 2005. (Tr. 12). The Plaintiff timely filed a request for hearing on July 22, 2005. (Tr. 12, 34). A hearing was held on September 6, 2007 before the Honorable Drew A. Swank, Administrative Law Judge, via video conference. (Tr. 12, 366-396). The Plaintiff was represented by Jeffrey Kushner, Esq. (Tr. 12, 370). The ALJ ordered a comprehensive examination after the hearing, and the report was made part of the record (Exhibit 12F). (Tr. 12). The ALJ proffered a copy of that report and Mr. Kushner filed a response, requesting a supplemental hearing. (Tr. 105-106). No supplemental hearing was held because the ALJ issued a partially favorable decision on December 26, 2007, finding the Plaintiff disabled from March 12, 2007, up to the date the ALJ last found Substantial Gainful Activity (SGA). (Tr. 14, 18-19). The Plaintiff filed a Request for Review of the Hearing Decision with the Appeals Council on July 22, 2007. (Tr. 12, 360-365). The Appeals Council denied the Plaintiff's request for review. (Tr. 4-7). Therefore, the decision of the Commissioner became final. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

## *Plaintiff's History*

The Plaintiff was born on March 13, 1957, making him fifty (50) years of age at the time of the hearing. (Tr. 53). The Plaintiff's disability insured status expired on December 31, 2009. (Tr. 12). The Plaintiff has a seventh (7th) grade education and has difficulty reading, writing, and

performing simple mathematics. (Tr. 375). The Plaintiff's past relevant work is that of a heavy equipment operator, primarily driving a tractor, mower, conveyor banks or other heavy equipment. (Tr. 378). The Plaintiff's job also involved heavy lifting, including lead pipes weighing approximately 40 or 50 pounds. (Tr. 378). The Plaintiff alleges an onset disability date of September 15, 2004.

## *Medical History*

The medical evidence in this case is quite expansive as it covers the period from the year 2000 through Dr. Rabinowitz' post hearing examination of November 2007. During this time period, Plaintiff has been seen by Drs. Toro, Sateen, C. Martinez, R. Martinez, Benitez, Mcraney, as well as having been hospitalized at Lehigh Regional Medical Center, seen at the Lee Memorial Emergency Room, a participant in physical therapy and a regular patient of the wound clinic run by Dr. Benitez (Tr. 107-359).

The Plaintiff's medical records begin in October 25, 2000, when the Plaintiff was seen at the East Pointe Hospital in Lehigh Acres, Florida by Dr. Robert Martinez. (Tr. 116). These records indicate that Plaintiff was a recently diagnosed diabetic and that he had developed a blister and ulceration on of the plantar portion of his left foot due to tight fitting shoes. (Tr. 116). During this visit, the ulcerated area was debrided and underneath the blister, some superficial necrosis was seen. (Tr. 116). The Plaintiff's foot x-ray revealed no abnormality of the bone. (Tr. 116). The Plaintiff had good pulses but peripheral neuropathy was noted. (Tr. 116). Treatment included debridement of the ulcer, whirlpool treatments and an MRI was recommended to rule out any possibility of osteomyelitis. (Tr. 116).

On November 7, 2000, the Plaintiff presented to Dr. Martinez for follow-up. (Tr. 304). The

wound was healing well. (Tr. 304). A bedside debridement was performed. (Tr. 304). The Plaintiff began taking diabetic medications at home. (Tr. 304). The Plaintiff was instructed to discontinue crutches, switch to an extra wide shoe, and begin to place weight on the foot. The Plaintiff was told to return in two (2) weeks for repeat evaluation and possible release back to work. (Tr. 304).

On November 20, 2000, the Plaintiff returned to Dr. Martinez for re-evaluation. Dr. Martinez found that Plaintiff's foot ulcer had improved sufficiently to allow him to return to work the following week. (Tr. 304).

Dr. Martinez treated the Plaintiff for another foot problem on August 6, 2001. (Tr. 115,286). This time, the Plaintiff presented with celluitis of the feet. (Tr. 115). Examination revealed blistering of the left big toe and necrotic tissue on the hallux and the fifth toe. (Tr. 115). The Plaintiff reported decreased sensation to the toes and gangrene appeared present. (Tr. 286). The Plaintiff was admitted to the hospital with a diagnosis of "gangrene of the tips of the right foot". (Tr. 286). Dr. Martinez noted that the Plaintiffs blood sugar was under "good control." (Tr. 115). Dr. Martinez ordered imaging studies for osteomyelitis, and in both cases the studies were negative (Tr. 116, 286).

On October 5, 2001, the Plaintiff appeared to Dr. Martinez. (Tr. 280). He was seen my Todd D. Thomason, ARNP. (Tr. 280). The Plaintiff denied any problems with his toes and had returned to work. (Tr. 280). The Plaintiff was instructed to put ointment on his foot, keep his dressings dry, and return in one month. (Tr. 280).

The Plaintiff was seen by Dr. Elmer Toro from February 3, 2004, through December 9, 2004. (Tr. 162-201). On February 3, 2004, the Plaintiff reported a foot ulcer that had been present for approximately one week with aching pain. (Tr. 186). The Plaintiff's hypertension and diabetes were

both uncontrolled at this point in time. (Tr. 186).

On March 2, 2004, the Plaintiff presented to Dr. Toro as a follow-up to check his foot ulcer. (Tr. 183). Dr. Toro stated the ulcer was healing well but still approximately 5x2 cm in size. (Tr. 183). Dr. Toro felt the Plaintiff did not understand the severity of the problem. (Tr. 183). The Plaintiff was referred to diabetic teaching classes. (Tr. 183).

On April 2, 2004, Dr. Toro's treating notes reveal that the Plaintiff's foot ulcer was improving. The Plaintiff was caring for the wound at home with brown sugar. (Tr. 180). By May, Dr. Toro stated the wound looked good and the Plaintiff was doing well. (Tr. 177).

On July 30, 2004, Dr. Toro stated the Plaintiff denied any trouble with his feet. (Tr. 174). Dr. Toro also stated the foot ulcer looked "great". (Tr. 174). The Plaintiff was instructed to return in three (3) months. (Tr. 174).

Medical records from the Lehigh Regional Medical Center dated September 21, 2004, written by Dr. Elmer Toro, MD., indicate that Dr. Toro had been treating the Plaintiff for a diabetic foot ulcer for approximately the preceding eight months. (Tr. 220). During this period, the Plaintiff was seen at the Lehigh Regional Medical Center's wound care clinic and was on a variety of medications for his diabetes. (Tr .220). These same records show that the Plaintiff came to see Dr. Toro on September 20, 2004, complaining of another foot ulcer, this time on the left foot, which had begun three weeks earlier. (Tr. 220). Dr. Toro noted that the Plaintiff had been "extremely non-compliant" with both his diet and his medications. (Tr. 220-221). Despite repeated instructions to monitor his feet daily, the Plaintiff stated he had been having trouble for two to three weeks. (Tr. 220). Treating the Plaintiff with insulin was difficult because they could not ascertain Plaintiff's diabetic control due to his non-compliance. (Tr. 221). Dr. Toro's physical examination of September 20, 2004,

revealed significant swelling and edema from Plaintiffs ankle down. His pulses were decreased (in both extremities), left pulse weaker than the right. (Tr. 221). The Plaintiff also had decreased sensation in both feet and decreased pulses up to his groin bilaterally. (Tr. 221). His left foot ulcer measured 2 cm x 2 cm and was significant for dark colored drainage. (Tr. 221). Despite the fact that he had 2-3+ edema in his left foot, it was not tender. (Tr. 221). Dr. Toro's assessments were "diabetic foot ulcer, diabetes, hypertension and hypercholesterolemia. (Tr. 221-222). Once again, Dr. Toro noted that Plaintiff had been non-compliant with medication, diet and advice and he is still in denial of his diabetes. (Tr. 173).

On September 22, 2004, Dr. Leonard Benitez, M.D., the director of the wound care clinic, ordered a three phase radionuclide bone scan of the feet. (Tr. 223). Test results revealed possible osteomyelitis at the first metatarsophalangeal joint of the left foot. (Tr. 223). A radiograph of the left foot also showed osteomyelitis of the left foot at the same location indicated by the bone scan. (Tr. 224).

On September 24, 2004, the Plaintiff presented to Dr. Toro for a follow-up. (Tr. 171). Dr. Toro informed the Plaintiff that amputation would be necessary. (Tr. 171). Dr. Toro noted the Plaintiff was down and sullen, despite having known for a month of this possibility. (Tr. 171).

On September 28, 2004, the Plaintiff presented to the Lehigh Regional Medical Center. (Tr 120). Dr. Toro again noted the Plaintiffs poorly controlled diabetes, and noncompliance with medication and diet. (Tr. 120). Dr. Toro stated the Plaintiff appeared the day before admission with another foot ulcer. (Tr. 120). The Plaintiff denied any pain, fever, chills, nausea or vomiting. (Tr. 120). The Plaintiff was seen by Dr. Benitez who recommended admission for further work-up and possible amputation. (Tr. 120). Examination of the lower extremities showed decreased pulses from

the femoral region down. (Tr. 121). The Plaintiff had necrotic edematous left foot that was extremely malodorous and showed signs of gangrene and gas-forming organisms. (Tr. 121).

On September 29, 2004, Dr. Robert Martinez, performed debridement and an open amputation of Plaintiff's first two toes. (Tr. 126). Post surgical pathology reports confirmed the presence of gangrene in the portions of the amputated toes examined. (Tr. 143, 145).

On October 4, 2004, Dr. Robert Martinez operated on the Plaintiff's left foot and discovered that given the level of infection, it was necessary to perform a transmetatarsal amputation. (Tr. 124). The Plaintiff tolerated the surgery well. (Tr. 125). The amputation site was left open due to the infection and a thick messing was applied (Tr. 125).

On October 21, 2004, Dr. Benitez completed a Non-Participating Provider and Special Services Request form for Aetna Insurance Co. stating that Plaintiff was status post transmetatarsal amputation and required wound care that no other physician performed in the area. (Tr. 197). Dr. Benitez estimated that it would probably would require 6-12 months of wound clinic treatment for Plaintiff's wound to heal. (Tr. 197).

A MetLife Attending Physician Statement completed in Fall 2004, indicates the Plaintiff was seen for osteomyelitis and diabetic foot ulcer and that his subjective symptom was sepsis. (Tr. 192). On this statement, Dr. Toro indicated the Plaintiff was not competent to endorse checks and handle money. (Tr. 193). As to physical capabilities, he listed that the Plaintiff could neither stand nor walk, but could sit for 8 hours intermittently. (Tr. 193). He also indicated the Plaintiff could not climb, twist, bend or stoop, the Plaintiff could occasionally lift items, and that his hand movements and dexterity was normal. (Tr. 193). The Plaintiff was found to be unable to work due to a "severe systemic infection". (Tr. 193).

Dr. Toro had completed two earlier Attending Physician Statements indicating the need for Plaintiff to stay off his feet or his diabetic ulcer would become infected. Dr. Toro stated the left foot was very tender and painful to walk on. (Tr. 188). Dr. Toro further indicated that the foot was in danger of amputation. (Tr. 188).

Post surgical follow up notes dated October 12, 2004, show that the Plaintiff had a full range of motion of the right hip, knee and ankle. (Tr. 134). He also had some ecchymotic contusions and dermitis around the right knee. (Tr. 134). In contrast, his left leg had a full range of motion in his hip and knee. (Tr. 134). The wound had been left open and the Plaintiff was undergoing wound care. (Tr. 134). VAC therapy was recommended. (Tr.134). Every attempt was going to be made to preserve the foot . (Tr. 135). The Plaintiff would require repeat debridement with remobilization of the flap if there is no evidence or granulation or adherence. (Tr. 135)

During the remainder of October 2004, the Plaintiff, under the care of Dr. Benitez, underwent wound VAC therapy and debridement when additional non-viable tissue was discovered. (Tr. 216). The treatment regimen of wound VAC therapy and dressings was continued into November 2005. During his November 1, 2005 appointment, Dr. Benitez referenced a tunneling underneath the area of the muscle flap, in the central portion of the foot. (Tr. 216). The Plaintiff had moderate serosanguineous drainage with some foul odor. (Tr. 216). The Plaintiff underwent some more debridement and the application of a wound VAC dressing. (Tr 216). Dr. Benitez' assessment consisted of diabetic foot ulcers, chronic infection, osteomyelitis, status post transmetatarsal amputation, with open stump secondary intention wound healing. (Tr. 216). Dr. Benitez continued to treat the Plaintiff throughout November 2005.

On November 29, 2005, Dr. Benitez stated the Plaintiff was steadily improving. (Tr. 211).

The Plaintiff's wound VAC therapy was discontinued and he was placed in a Unaboot. (Tr. 211). The Plaintiff continued wound care therapy in December and January .

On January 24, 2006, Dr. Benitez wanted to order an amputation shoe for the Plaintiff (Tr. 205). At this follow-up appointment, Dr. Benitez noted the Plaintiff 's wound appeared to be somewhat desiccated with callous formation. (Tr. 205). A limited debridement of the superficial callous was performed and the orthotic specialist was there to measure and fit the Plaintiff with the special post-amputation shoe and some compression stockings. (Tr. 205). The Plaintiff was to continue with the Unna-boot compression therapy until the shoe and compression stocking were to be placed. (Tr. 205).

During the period between November 23, 2004 and September 29, 2005, in addition to being located at the wound center and with Dr. Benitez, the Plaintiff was also being seen by Dr. Rajan Sareen, MD. (Tr. 241-247). During his November 24, 2004 examination, the Plaintiff was found to have edema in his extremities, his reflexes well within normal limits as was his coordination and balance. (Tr. 241, 243). The Plaintiff was noted to be on several diabetic medications and Oxycontin for pain. (Tr. 246). He also demonstrated numbness in his lower extremities (Tr. 246). While Dr. Sareen's treating notes indicate that the Plaintiff's gait, coordination and range of motion were normal, he continued to experience left foot pain, swelling of both feet and on March 25, 2005, numbness in his toes and fingers. (Tr. 243-245).

On August 20, 2005, Dr. Sareen completed a "Medical Verification Form". (Tr. 242). Dr. Sareen opined that the Plaintiff was unable to work even with restrictions due to his diabetes and his IMA on the left foot. Dr. Sareen also stated that the Plaintiff could not walk and that his medications (Humilin and Captophil) would limit Plaintiffs ability to work.

9

Dr. Sareen completed a medical statement specific to diabetes on September 29, 2005. (Tr. 242). In that statement, he opined that the Plaintiff could work 1 hour per day in an eight hour workday, sit or stand for 15 minutes at one time, and could lift 5 pounds on either an occasional or frequent basis. Finally, he opined that the Plaintiff could only balance occasionally. (Tr. 241).

In November 2005, the Plaintiff was seen by Dr. Robert Martinez for extreme pain in his foot related to his diabetes. (Tr. 274-278). A physical examination by Dr. Martinez noted that the Plaintiff's pain level was 6 on a scale from 1-10, with 10 being the most intense pain, his blood sugar was 272, and that both edema and varicosital changes with his veins were present. (Tr. 275).

On December 29, 2005, Dr. Clarisol Martinez treated the Plaintiff for tingling of his limbs and pain running down into the left foot when walking. (Tr. 270). Upon examination, he was found to have 3 superficial abrasions on his left shin from a bumped leg. (Tr. 270). The Plaintiff's blood glucose level was 230. (Tr. 270). Dr. Martinez found hypertension, hyperlipidemia, Type II diabetes mellitus, and diabetic peripheral neuropathy. (Tr. 271). The Plaintiff was counseled on regular exercise and a diabetic diet and was instructed to get blood work done and return in one (1) month. (Tr. 271).

The Plaintiff saw Dr. Clarisol Martinez in January and February of 2006, for sinusitis and a cold, and returned on February 9, 2006, for a follow up on his diabetes and complaints of left foot pain. The Plaintiff wore slippers to the clinic because he stated that shoes hurt his amputation site. (Tr. 260). Dr. Martinez reported the Plaintiff was "finally" taking meds as instructed. (Tr. 260) At this time, no foot ulcers or rash were seen. (Tr. 260-261).

The Plaintiff returned to Dr. Martinez on April 6, 2006, and another foot ulcer had appeared on the feet. (Tr. 256). The Plaintiff reported that he was struggling to afford his medication and

asked Dr. Martinez for refills. (Tr. 255-256). A blood sugar check by fingerstick was 176. (Tr. 256). The Plaintiff was again counseled on regular exercise, continue with current medication and to consult with an opthalmologist. (Tr. 256).

On June 27, 2006, the Plaintiff presented with a burning sensation upon urination and left leg pain for two weeks. (Tr. 250). The Plaintiff also ran out of medication again. (Tr. 250). At the time of this appointment, the Plaintiffs current medications were: Novalin, Hyzaar and Lyrica. (Tr. 250). A physical examination revealed a localized brownish discoloration of both lower legs (which had been present in previous exams). An ulcer was also found on the feet but not the lower extremities. (Tr. 251). Balance, gait and stance were all deemed to be normal. (Tr. 251). The Plaintiff's pinprick blood sugar was 486 due to Plaintiff's lack of medication. (Tr. 251). Dr. C Martinez counseled him about his diet and medications and changed his medications by removing Lyrica and adding Amoxil, Lopid and Ultram. (Tr. 252).

On September 19, 2006, the Plaintiff saw Dr. C. Martinez for a follow up for foot pain and it was noted that he still had an ulcer on his foot. (Tr. 334). Additionally, he needed refills on his medications. (Tr. 334-335). His blood sugar was 66. (Tr. 335).

On November 14, 2006, Plaintiff was seen by Dr. Sudha Meraney for continued pain and requested a different pain medication since his amitryptaline was not working. (Tr. 332). No edema was seen at this appointment (Tr. 332). While the Plaintiff's edema had not been present during his November 14, 2006 appointment, he went to the Lee Memorial Hospital Emergency Room ten (10) days later for bilateral foot swelling. (Tr. 343). The Plaintiff was found to have 1 to 2+ edema and erythema (redness) to his mid calf. (Tr. 343). The Plaintiff was diagnosed with: peripheral edema, peripheral neuropathy secondary to insulin dependent diabetes, and hypertension. (Tr. 343). He was

prescribed a ten (10) day supply of Lasix, and Vicodin for pain. (Tr. 344). He was also instructed to elevate his feet. (Tr. 343-344).

On June 5, 2007, the Plaintiff went to see Dr. Sudha Meraney for foot pain related to neuropathy and a swollen left foot. (Tr. 317). He was out of his blood pressure medicine and was given samples of Lyrica and Hyzaar. (Tr. 317). Dr. Meraney noted that the Plaintiff does not follow a diabetic diet and does not check accuchecks. (Tr. 317). The Plaintiff's blood sugar level by fingerstick was 162. (Tr. 317). The Plaintiff was referred to an opthalmologist, however, the Plaintiff declined the referral based upon finances. (Tr. 318). The Plaintiff was noted to be extremely non-compliant with a diabetic diet and was counseled on following the diet strictly. (Tr. 318).

The State Agency examiner also reviewed the Plaintiff's medical records. The first review occurred on March 11, 2005, and the second on June 22, 2005. (Tr. 225-232, 233-240). Both reviewing physicians found the Plaintiff capable of performing light work in the Physical Residual Functional Capacity Assessment dated March 11, 2005. (Tr. 225-232). The Plaintiff had some postural limitations and it was noted that his claims of pain were credible. (Tr. 230). In the Physical Residual Functional Capacity dated June 22, 2005, the Plaintiff was found to have occasional limitations with respect to postural activities and that Plaintiff should avoid hazards (Tr. 235, 237).

Following the hearing, the ALJ ordered another consultative examination. This consultative examination was performed on November 3, 2007, by Dr. Stanley Rabinowitz. (Tr. 348-358). Dr. Rabinowitz noted the Plaintiff's medical history and listed Plaintiff's complaints as (1) hypertension, (2) diabetes, and (3) left foot ulcers (Tr. 348). Dr. Rabinowitz' physical examination revealed that the Plaintiff's vision was 20/50 in both eyes with glasses. The Plaintiff's weight was 238 pounds

and his blood pressure was 170/100 mm/Hg (right) and 190/106 mm/Hg (left). (Tr. 349). The Plaintiff was observed to be walking with a quad cane, with a right antalgic gait, and was obese. (Tr. 349). Dr. Rabinowitz observed 2+ peripheral edema of the right lower extremity. (Tr. 350). The right foot was warm to the touch and there was an ulcer involving the area between the fourth and fifth toes on the volar surface without current drainage. (Tr. 350). The Plaintiffs left IMA site was "well-healed" and his grip strength and dexterity were normal. (Tr. 350).

Dr. Rabinowitz completed a medical source statement outlining Plaintiff's physical capacity. Dr. Rabinowitz noted that the Plaintiff could lift and carry up to ten (10) pounds continuously and up to fifty (50) pounds frequently. (Tr. 354). Dr. Rabinowitz stated that the Plaintiff could sit for eight (8) hours, stand for two (2) hours and walk for one (1) hour in an eight (8) hour workday. (Tr. 355). Dr. Rabinowitz also noted the Plaintiff's ability to sit at one time at six (6) hours, stand for fifteen (15) minutes at a time , and walk for ten (10) minutes. (Tr. 355).

With respect to ambulation, Dr. Rabinowitz indicated that Plaintiff required a cane to ambulate and that one was medically necessary and could only walk less than 10 feet without a cane. (Tr. 355). As to his ability to use his feet and hands for work functions, the only limitations involved pushing and pulling. (Tr. 356). The Plaintiff could never use his right foot and could only use his left foot frequently for the operation of foot controls. (Tr. 356). Dr. Rabinowitz found that the Plaintiff could never climb ladders or scaffolds and only occasionally perform other postural activities (Tr. 357). There were no visual limitations. (Tr. 357). Dr. Rabinowitz also opined the Plaintiff could only work at unprotected heights, moving mechanical parts or operate a motor vehicle on an occasional basis. (Tr. 358). Finally, Dr. Rabinowitz found that the Plaintiff cannot perform activities such as shopping, ambulate without a wheelchair, walker or two canes, or walk a block at

a reasonable pace on rough or uneven surfaces. (Tr. 359).

*Administrative Law Judge's Decision*

Upon consideration of the record, the ALJ found the Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2009. (Tr. 14). The ALJ found the Plaintiff has not engaged in substantial gainful activity since September 15, 2004, the alleged onset disability date. (Tr. 14). The ALJ found the Plaintiff has the following severe impairments: diabetes mellitus with peripheral neuropathy, transmetatarsal amputation of the left foot, and an ischemic ulcer of the right foot. (Tr. 14). However, the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §404.1520(d) and 416.920(d). (Tr. 15). Upon careful consideration of the entire record, the ALJ determined the Plaintiff has the residual functional capacity to perform the full range of sedentary work. (Tr. 15). The Plaintiff was found to be unable to perform any past relevant work. (Tr. 18). The ALJ found the Plaintiff was forty-seven (47) years old on the alleged onset disability date, which is defined as a younger individual, age 45-49. Tr. 18). On March 12, 2007, the Plaintiff turned fifty (50) years of age, changing the Plaintiff's age category to an individual approaching advanced age. (Tr. 18). The ALJ found the Plaintiff has limited education but is able to communicate in English. (Tr. 18). It was determined the Plaintiff's skills were not transferable to jobs within his residual functional capacity. (Tr. 18). The ALJ opined that prior to March 12, 2007, the date the Plaintiff's age category changed, considering the age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the Plaintiff could have performed. (Tr. 18). Beginning on March 12, 2007, again considering the Plaintiff's age, education, work experience, and residual functional capacity, there

are not a significant number of jobs in the national economy that he could perform.  (Tr. 19).

Therefore, the ALJ concluded the Plaintiff was not under a "disability" as defined in the Social

Security Act, prior to March 12, 2007, but became disabled on that date and has continued to be

disabled through the date of the decision.  (Tr. 19).

## THE STANDARD OF REVIEW

### A. Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the

correct legal standards,  and whether the findings are supported by substantial evidence. Hibbard v.

Commissioner, WL 4365647 *2 (M.D. Fla. December 12, 2007) (citing Richardson v. Perales, 402

U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080

(11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential

inquiry described in the regulations[2].  20 C.F.R. §§ 404.1520(a), 404.920(a).  The Commissioner's

findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).

"Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a

---

[2]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:
*Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.
*Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.
*Step 3.*  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.
*Step 4.*  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.
*Step 5.*  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, WL 4365647 *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n. 8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]." Phillips, 357 F. 3d at 1240 n. 8; Dyer v. Barnhart, 357 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

**B.  Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir.

1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Thomas v. Barnhart, WL 3366150 *3 (11th Cir. December 7, 2004) (citing Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993)). The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1321 (M.D. Fla. 2002) (citing Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996)).

"To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim." Johnson, 268 F. Supp. 2d at 1321; Jackson, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); Davis, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards). "Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision." Johnson, 268 F. Supp. 2d at 1321 (citing Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain the his basis of his decision)).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Johnson, 268 F. Supp. 2d at 1321; See Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding the Court may at any time order additional evidence to be

taken before the Secretary upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding); *See* Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095; Johnson, 268 F. Supp. 2d at 1321.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). "To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level." Green v Commissioner, 2007 WL 4287528 * 3 (M.D. Fla. Dec. 4, 2007) (citing Jackson, 99 F.3d at 1090 - 1092; *See also* Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994)). With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand,

and does not enter a final judgment until after the completion of remand proceedings.[3] Id.

## THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

## DISCUSSION

The Plaintiff alleges the ALJ erred as follows: (1) the ALJ failed to properly weigh the medical opinions in this case; (2) the ALJ's Residual Functional Capacity finding was not supported by substantial evidence; (3) the ALJ improperly used the grids at Step Five to determine the onset date of the Plaintiff's disability; and (4) the ALJ violated the Plaintiff's due process rights by failing to grant the Plaintiff a supplemental hearing. The Government responds that substantial evidence supports the ALJ's determination the Plaintiff was disabled beginning on March 12, 2007.

### *(1) Whether the ALJ Failed to Properly Weigh the Medical Opinions*

The Plaintiff argues the ALJ failed to give proper weight to two (2) physicians who treated the Plaintiff: Dr. Elmer Toro, and Dr. Sareen. The Plaintiff further argues the ALJ erred by giving

---

[3]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. Id. In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

controlling weight to the medical opinion of a consulting physician Dr. Stanley Rabinowitz.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580, (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2);

Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at1334.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

The ALJ dismissed the opinion of Dr. Toro because Dr. Toro dismissed the Plaintiff from his practice on October 18, 2004, for failure to follow his prescribed medical and dietary regimen. (Tr. 17). In his opinion, the ALJ stated:

> Dr Elmer Toro reported that Mr. Shird required a transmetatarsal amputation of the left foot (Exhibit 2F), followed by wound care. Dr. Toro dismissed the claimant from his practice as of October 18, 2004[,] due to his lack of compliance with his prescribed medical and dietary regimen (Exhibit 3F).

(Tr. 17). The ALJ continued:

> [a]s for the opinion evidence, Dr. Toro opined on October 21, 2004, that the claimant could not perform any work while recovering from his amputation surgery (Exhibit 3F, p. 30). The undersigned (ALJ) gave that assessment limited weight because Dr. Toro has not examined the claimant since October 18, 2004.

(Tr. 17). The ALJ also noted that "records of Dr. Leonard Benitez through February 16,

2005[,] reflect good healing of the amputation site and the prescription of Unna-boot therapy and compression stockings (Exhibit 4F)." (Tr. 17). Dr. Toro's opinion was not that the Plaintiff was disabled but that he could not work while he was recovering from surgery. The ALJ followed up his determination that Dr. Toro's opinion carried limited weight with the opinion of Dr. Benitez who opined in February 16, 2005, that the amputation was healing well. Thus, the ALJ properly discounted the opinion of Dr. Toro who stopped treating the Plaintiff just after the amputation and used the opinions of the new treating physicians to support his disability determination. Thus, the ALJ properly discounted Dr. Toro's opinion.

The ALJ noted that "Dr. Rajan Sareen, who examined the claimant at least through July 26, 2005, reported that while the claimant had diabetes mellitus with lower extremity numbness and edema, his gait, balance, coordination, and upper extremity strength were normal (Exhibit 7F)." Regarding the opinion of Dr. Sareen, the ALJ stated:

> Dr. Sareen opined on September 29, 2005[,] that the claimant could not work more than an hour, sit more than fifteen minutes or stand more than fifteen minutes (Exhibit 7F, p. 1). That assessment warrants minimal weight because Dr. Sareen had last examined the claimant as of July 26, 2005, and his last treatment note reflected that the claimant had a normal gait, normal balance, and normal coordination.

(Tr. 18). The ALJ bases his decision upon the duration of a treating physicians relationship with a claimant and whether or not the physician's medical records support the opinion. 20 C.F.R. § 404.1527 (d). Here, the ALJ noted that Dr. Sareen had not seen the claimant in over two (2) years, and the physician's last comment was the claimant had normal gait, normal balance, and normal coordination. Thus, the ALJ clearly articulated the reasons for giving less weight to the opinions of Drs. Toro and Sareen.

22

The Plaintiff objects to the weight the ALJ gave to Dr. Rabinowitz, a state agency consultant. Dr. Rabinowitz opined the Plaintiff could lift fifty (50) pounds frequently and 100 pounds occasionally, sitting up to eight (8) hours in an eight hour work day, standing two (2) hours, and walking one hour, with no climbing of ladders or scaffolds. (Tr.354-359). As for the weight the ALJ gave to the consulting physician, Dr. Rabinowitz, SSR 96-6 requires the ALJ to not only consider the program physicians opinions because these physicians are considered experts, but the ALJ must also state, in his decision, the weight he has given to those opinions.

Regarding Dr. Rabinowitz's opinion, the ALJ noted:

> State agency medical consultants concluded that Mr. Shird had a residual functional capacity for light work entailing occasional postural maneuvers and no exposure to hazards (Exhibit 5F-6F). That assessment also warrants limited weight because the consultants did not have the opportunity to observe the claimant or the opportunity to consider additional evidence submitted subsequent to their review of the record. The undersigned gave greater weight to the most recent assessment of consulting examiner Dr. Rabinowitz, who upon review of the claimant's medical records and an examination of Mr. Shird, recommended limitations on the claimant's ability to stand and walk, but not on his ability to sit due to his combined impairments.

(Tr. 18). While Dr. Rabinowitz is a consulting physician he also examined the Plaintiff before giving his opinion, which entitles Dr. Rabinowitz's opinion to greater weight than if he had merely reviewed the records. Sharfarz v Bowen, 825 F.2d 278, 279-280 (11th Cir. 1987). After reviewing Dr. Rabinowitz's report, the ALJ actually downgraded Dr. Ravinowitz's opinion limiting the Plaintiff to a full range of light sedentary work. (Tr. 18). Thus, the ALJ did not err in his review of Dr. Rabinowitz, but gave him the proper weight due an examining consultant physician.

The Plaintiff states the ALJ did not support his RFC assessment with substantial evidence. The fourth step in the evaluation process requires the ALJ to determine the plaintiff's residual functional capacity (RFC) and based on that determination, decide whether the plaintiff is able to return to his/her previous work. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of RFC is within the authority of the ALJ and along with the claimant's age, education, and work experience the RFC is considered in determining whether the claimant can work. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. Phillips, 357 F.3d at 1238. That is, the ALJ must determine if the claimant is limited to a particular work level. Id. (citing 20 C.F.R. § 404.1567).

In his decision, the ALJ reviewed the medical evidence including the opinions of the Plaintiff's treating physicians Dr. Sareen, Dr. Toro, Dr. Benitez, Dr. Clarisol Marinez and Dr. Sudha Meraney. (Tr. 17). As noted above the ALJ properly discounted the opinions of Drs. Sareen and Toro. The ALJ also reviewed the reports of two state agency physicians and the opinion of the state agency examining consultant physician Dr. Rabinowitz.

The ALJ also considered the Plaintiff's own testimony in making his RFC determination. The Plaintiff stated:

He had no difficulty sitting and can lift weights up to ten (10) pounds, but would be unable to perform the heavy exertional demands of his relevant work as a heavy equipment operator for a water company. The ALJ continued "[h]e testified that he can only stand or walk for brief periods of time, and cannot bend at the knees. He is able to use his hands without restriction, and can perform some light household chores, shop, drive short distances and prepare his own meals."

(Tr. 16). Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting a certain amount of time, walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567. Thus even the Plaintiff's own testimony at his hearing confirmed that he could perform at sedentary work levels. Thus, based upon the ALJ's review of the medical evidence and his review of the Plaintiff's own testimony, the ALJ supported his RFC determination with sufficient evidence from the record.

### (3) Whether the ALJ Improperly Used the Grids

The Plaintiff states the ALJ improperly used the Grids to determine the Plaintiff's onset of disability date as the Plaintiff's fiftieth (50th) birthday.

### (a) Grids Determination

The Plaintiff argues that if the ALJ was in error when he made his RFC determination, then he could not use the Grids to make his decision, and would instead have to use a vocational expert. Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Augusto v. Commissioner of Social Security, 2008 WL 186541 *7(M.D. Fla. January 18,

2008) (citing <u>Foote</u>, 67 F.3d at 1558). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir.1989). This burden may sometimes be met through exclusive reliance on the "grids." <u>Augusto</u>, 2008 WL 186541 at *7. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); <u>Augusto</u>, 2008 WL 186541 at *7 (citing <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed.2d 66 (1983) (holding exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." <u>Augusto</u>, 2008 WL 186541 at *7 (citing <u>Walter v. Bowen</u>, 826 F.2d 996, 1002-3 (11th Cir.1987)). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. <u>Augusto</u>, 2008 WL 186541 at *7 (citing <u>Foote</u>, 67 F.3d at 1559). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. <u>Augusto</u>, 2008 WL 186541 at *7. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. <u>Id.</u> (citing <u>Foote</u>, 67 F.3d at 1559).

To preclude use of the grids, a limitation must significantly or severely restrict the ability to

work. A minor or merely possible restriction is insufficient. <u>Augusto</u>, 2008 WL 186541 at *7 (citing

<u>Kimbrough v. Sec'y of Health & Human Servs.</u>, 801 F.2d 794, 796 (6th Cir.1986)).

In this instance, the ALJ's RFC determined the could work an unlimited range of sedentary work without any non-exertional limitations. While the Plaintiff states his alleged pain prevented him from being able to work a full range of sedentary work. The ALJ considered his pain when he reduced his exertional level from light to light sedentary work. (Tr. 18). The ALJ noted that given "the persuasive assessment of Dr. Rabinowitz, the objective findings of his treating physicians, and the claimants admitted activities of daily living, the undersigned concluded that Mr. Shird has a residual functional capacity for a full range of light work. . . ." (Tr. 18). The Plaintiff failed to show any non-exertional limits that would prevent the ALJ from using the Grids to make a determination of an onset date of March 12, 2007.

The ALJ supported his RFC determination with substantial evidence from the record. Thus, the ALJ did not err when he used the Grids to determine the Plaintiff was not disabled prior to March 12, 2007.

### (b) The Plaintiff's Onset Date

The Plaintiff also argues the ALJ erred by using the Plaintiff's 50th birthday as his onset of disability date. The Plaintiff turned fifty (50) years old on March 12, 2007. The ALJ used March 12, 2007, as the onset of disability date. Under the C.F.R. a person aged 50-54 is considered a person closely approaching advanced age. 20 C.F.R. § 404.1563(d). The Regulation reads in pertinent part:

> Person closely approaching advanced age. If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe

impairment(s) and limited work experience may seriously affect your ability
to adjust to other work.

20 C.F.R. § 404.1563(d). The Plaintiff's age at the alleged time of the onset of disability was forty-

seven (47). A person forty-seven (47) is classified as a younger person under the Grids. 20 C.F.R.

§ 404.1563(c). A person forty-seven years old that can work a full range of light sedentary work,

like the Plaintiff, is not considered disabled under the Grids. *See* Muir v. Astrue, 2009 WL 799459

* 7 (M.D. Fla. March 24, 2009). However, on March 12, 2007, the Plaintiff turned fifty (50) years

old. Utilizing Grid Rule 201.21, a younger person, under the age of fifty (50), with the Plaintiff's

RFC, for a wide full range of sedentary work, with the Plaintiff's age, education, and past work

experience is not disabled under the Grids. However, upon obtaining the status of a person closely

approaching advanced age (50-54), on March 12, 2007, the ALJ correctly applied Grid Rule 201.14

to find the Plaintiff disabled as of that date. *See* Muir v. Astrue, 2009 WL 799459 at * 7 (finding

that once a younger person age (45-50) with the RFC for a full range of sedentary work turned fifty

(50) he was properly found to be disabled upon obtaining a person closely approaching advanced

age). Therefore, having previously found that the ALJ correctly determined that the Plaintiff was not

disabled on September 15, 2004, the ALJ was right to then find the Plaintiff disabled on March 12,

2007 when he reached fifty (50) years of age.

### *(4) Whether the ALJ Violated the Plaintiff's Due Process Rights*

The Plaintiff argues the ALJ erred by failing to grant him a supplemental hearing and thereby

violated his due process rights. During the course of the hearing, the audio equipment

malfunctioned, and the ALJ stated that if the audio could not be fixed, the hearing would be

reconvened at another time so the Plaintiff's Counsel could finish his questioning. At that point, the

hearing was adjourned. The ALJ subsequently arranged for a consultative examination by Dr. Rabinowitz. Dr. Rabinowitz's results were then mailed to the Plaintiff's Counsel.

After reviewing the record and Dr. Rabinowitz's report, the ALJ awarded the Plaintiff benefits. However, the benefits were not awarded from the alleged onset date in 2004, but rather the benefits were awarded dating from March 12, 2007, the Plaintiff's 50th birthday. The Plaintiff states that making a determination without resuming the hearing denied him the right to a full and fair hearing, and violated his right to due process. The Government responds the ALJ had a right to discontinue the hearing and make determination at a later date whether or not to reopen the hearing.

Pursuant to the Regulations governing hearings before an ALJ, the ALJ may reopen the hearing if he or she believes there is material evidence missing from the hearing. 20 C.F.R. § 404.944. The Regulation reads in pertinent part:

> A hearing is open to the parties and to other persons the administrative law judge considers necessary and proper. At the hearing, the administrative law judge looks fully into the issues, questions you and the other witnesses, and accepts as evidence any documents that are material to the issues. The administrative law judge may stop the hearing temporarily and continue it at a later date if he or she believes that there is material evidence missing at the hearing. The administrative law judge may also reopen the hearing at any time before he or she mails notice of the decision in order to receive new and material evidence. The administrative law judge may decide when the evidence will be presented and when the issues will be discussed.

20 C.F.R. § 404.994. The Regulation is clear the ALJ may reopen the hearing if he or she believes that there is evidence missing that is material to the issues..

The Plaintiff argues that he was denied his due process rights when he was not allowed to cross examine Dr. Rabinowitz. To support his position, the Plaintiff relies on Leik v. Barnhart, 296

F. Supp. 2d 1345 (M.D. Fla. 2003). The Government argues the Plaintiff's due process rights were not violated because Dr. Rabinowitz's testimony did not conflict with the Plaintiff's treating physicians, as was the case in <u>Leik</u>.

In <u>Leik v. Barnhart</u>, the Court held for the ALJ to rely upon the testimony of two non-examining physicians, whose written opinions were submitted after the administrative hearing and which contradicted the plaintiff's treating physicians, and deny the plaintiff the opportunity to cross-examine, is a violation of the plaintiff's due process rights. <u>Id.</u> at 1350-1351. It is true that the Court in <u>Leik</u> found the claimant's rights were violated because the consulting physician's opinions conflicted with the opinions of the claimant's treating physicians. However, the facts of that case determined the Court's decisions in <u>Leik</u>.

The Eleventh Circuit Court of Appeals has taken a broader view of the issue than the one presented by the Government. In <u>Demenech v. Secretary of the Department of Health and Human Services</u>, the Eleventh Circuit found that it violates a claimant's right to procedural due process for the Commissioner to deny a claimant Social Security benefits based upon post-hearing medical reports without giving the claimant an opportunity to subpoena and cross examine the authors of such reports. 913 F. 2d 883, 884 (11th Cir. 1990). Thus, the <u>Demenech</u> Court found a violation of the claimant's due process rights because the claimant was not allowed to subpoena and cross examine the consulting medical expert. <u>Id.</u> at 884. It is clear that the Eleventh Circuit in <u>Demenech</u>, held a broader view of Plaintiff's right to cross examine Dr. Rabinowitz than the limited view Government is arguing from <u>Leik</u>

In this instance, the ALJ heavily relied on the opinion and consultant examination of Dr. Rabinowitz. Thus, the ALJ must have considered Dr. Rabionwitz's opinion to be material evidence

directly related to the issues in this case. The Plaintiff was denied the opportunity to cross examine Dr. Rabinowitz on his opinion, and therefore, the Plaintiff's due process rights were violated.

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The Final Decision of the Commissioner of Social Security Denying the Plaintiff, Peter L. Shird's Claim for Disability Insurance from the Onset Date of September 14, 2004, should be **REMANDED** pursuant to 42 U.S.C. § 405 (g)(Sentence Four) for further consideration of the following issue:

The hearing should be reopened and the Plaintiff should have the opportunity to cross examine the examining consulting physician Dr. Rabinowitz.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully Recommended** at Fort Myers, Florida, this   26th    day of May, 2009.


SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE



Copies:  Counsel of record, MJCD